## HAWKINS DOWNIE CO v HOLLAND

Ohio Appeals, 7th Dist, Mahoning Co

Decided Nov 3, 1933

Harrington, Huxley & Smith, Youngstown, for plaintiff in error.

John Ruffalo, Youngstown, for defendant in error.

## OPINION

By FARR, J.

As before stated, it is insisted that this judgment is against the weight of the evidence. In this behalf the record discloses that in March of 1929, the Hawkins-Downie Company began the work of this construction. In April Hagen took charge of the excavation, completing it in about two months. Thus the work progressed, and, as before stated, from time to time different persons or firms were connected with it, but upon the trial below these were found not

to be liable in any way for the happening of this accident.

In connection with this work it was necessary, as above stated, to construct sidewalks upon Cameron and Mabel Streets. Mabel Street is north of the building. The building faced eastwardly, and the construction of the sidewalk on Mabel Street was on the south side thereof. This other work had gone along for some time, but this piece of work was undertaken directly by the Hawkins-Downie Company. They employed a foreman by the name of John Layer, who had charge of the work. They rented from Hagen, drills or augers for the purpose of boring into the stone formation where this sidewalk was to be laid. It was of much the same character as the basement of the school building and blasting was necessary by the use of dynamite and dynamite caps. Hagen says that during the progress of the work he had occasion to go over to see how it was progressing, and upon that trip he said he saw the superintendent of the work take some dynamite caps and place them under some rocks. This is substantiated by Downie, probably of the firm of the Hawkins-Downie Company.

There is some suggestion in this connection that perhaps these boys may have obtained caps from some other source than the one here mentioned, but with reference to the caps it may be said two boxes were purchased of one hundred each. Upon the trial below about one hundred and forty of these caps were accounted for, and there was a remainder of about sixty caps that are unaccounted for, and about which no explanation is made. A little later, in connection with the work, it became necessary to purchase more caps, perhaps as a substitute for the caps which had been placed under the rock and by some one taken away. Thus it seems that there was the ability to account for one hundred and forty of these caps, leaving the remainder unaccounted for. The work mentioned in this connection, the things undertaken to be done, the only blasting that was done in this immediate vicinity then or for some time previous, was done by the Hawkins-Downie Company, and it was the last company performing that work. Caps are traced by its superintendent or by Hagen through the superintendent to this cleft or hiding place in some rocks adjacent the school building. A fairly comparative number of caps are unaccounted for as compared with the caps found by the boys. When a policeman was sent up to investigate the accident, he found some of these caps scattered about, and as a matter of safety saw fit to deposit them in the Mahoning River. There is some testimony that some stranger had been upon these grounds, but how very improbable it would be that any stranger would take a box of dynamite caps and hide them in the immediate vicinity of the school building when he is not shown to have had any possible connection with the activities or the work which had been carried on there for some time. They had not discolored or become oxydized by exposure to the atmosphere, and the suggestion comes, with some of the conceded facts in the case, that these caps had been placed within easy reach of those performing this work. That is to say, they had been hidden among the stones, which were near and which were taken from the basement, and it is further indicated that this was but a temporary hiding place and that they were to be used again.

The theory that these caps were placed there by some stranger to the whole affair is not reasonable, but the fact that these caps were connected with the work and used in it, and that the caps are connected with the superintendent of the work for the Hawkins-Downie Company, all tallies with the theory that it must have been the overt act of the employe of the Hawkins-Downie Company that placed these caps in such an unfortunate position that a lamentable accident happened to this child.

Without further discussion, which would be without profit and unnecessary, so far as the weight of the evidence is concerned, it is sufficient to say that this verdict and judgment are not contrary to or against the weight of the evidence.

Next, it was suggested in argument that this verdict is excessive. The jury awarded to the parent for this child the sum of $18,000. Dr. Keyes, an eye specialist of this city of reputable standing, testified upon the trial below as to the injury and how the center of the eyeball had been pierced by one, two or three small pieces of metal so that the iris of the eye protruded somewhat and was shorn off, but to summarize in that behalf, he said that this eye now has a "V" shaped scar upon it, the sight being gone, of course that a cataract is in the process of formation, and that there is no hope of the restoration of the eye. He then describes the possibility of sympathetic optholmia; that is to say, injury to this eye may affect the sight of the other eye to the extent that sight may be entirely lost. Dr. Beard testified to very much the

same as Dr. Keyes, stating that such things might occur, not denying the statement, particularly, made by Dr. Keyes. Therefore, with the possibilities of a sightless future, the loss of one eye and the possible loss of the other, and the nameless, numberless inconveniences which are, in any event, bound to occur, this court can not say that this verdict is excessive or that it manifests either passion or prejudice. After having carefully examined this record no reversible or prejudicial error is disclosed and the judgment is affirmed.

Judgment affirmed.

POLLOCK and ROBERTS, JJ, concur in the judgment.